**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANEUDY MEDINA BAEZ,<br><br>Plaintiff,<br><br>vs.<br><br>VOLT INFORMATION SCIENCES, INC, WILLIAM J. GRUBBS, NICK S. CYPRUS, BRUCE G. GOODMAN, LINDA PERNEAU, ARNOLD URSANER, and CELIA R. BROWN<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Aneudy Medina Baez ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Volt Information Sciences, Inc. ("Volt" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Vega Consulting, Inc. ("Parent") through merger

- 1 -
COMPLAINT

vehicle Vega MergerCo, Inc. ("Merger Sub") (collectively with "Parent", "Vega") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction.

2. The terms of the Proposed Transaction were memorialized in a March 12, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Vega will acquire all of the remaining outstanding shares of Volt' common stock at a price of $6.00 per share in cash. As a result, Volt will become an indirect wholly-owned subsidiary of Vega.

3. Thereafter, on March 25, 2022, Volt filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to Vega.

5. Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement on March 25, 2022, with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Volt shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among

other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Volt, provided by Volt to the Company's financial advisor Foros Securities LLC ("Foros"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Foros and provided to the Company and the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

9. Plaintiff is a citizen of New Mexico and, at all times relevant hereto, has been a Volt stockholder.

10. Defendant Volt provides traditional time, materials-based, and project-based staffing services in the United States, Europe, Canada, and the Asia Pacific. Volt is incorporated under the laws of the State of New York and has its principal place of business at 2401 N. Glassell Street, Orange, California 92865. Shares of Volt common stock are traded on the New York Stock Exchange under the symbol "VOLT".

11. Defendant William J. Grubbs ("Grubbs") has been a Director of the Company at all relevant times. In addition, Grubbs serves as the Chairman of the Board of Directors.

12. Defendant Nick S. Cyprus ("Cyprus") has been a director of the Company at all relevant times.

13. Defendant Bruce G. Goodman ("Goodman") has been a director of the Company at all relevant times.

14. Defendant Linda Perneau ("Perneau") has been a director of the Company at all relevant times. In addition, Perneau serves as the Company's Chief Executive Officer ("CEO"), Chairman of the Company Board, and President.

15. Defendant Arnold Ursaner ("Ursaner") has been a director of the Company at all relevant times.

16. Defendant Celia R. Brown ("Brown") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

18. Non-Party Vega is a consulting firm that provides consulting services to Fortune 500 and 100 companies as well as government entities.

19. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Volt maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Volt provides traditional time, materials-based, and project-based staffing services in the United States, Europe, Canada, and the Asia Pacific. The company operates through North American Staffing, International Staffing, and North American MSP segments. It provides

contingent staffing, direct placement, personnel recruitment, staffing management, and other employment services; and managed service programs consisting of managing the procurement, on-boarding of contingent workers, and specialized solutions, such as managing suppliers, sourcing and recruiting support, statement of work management, supplier performance measurement, optimization and analysis, benchmarking of spend demographics and market rate analysis, consolidated customer billing, and supplier payment management solutions. The company also offers call center and payroll services; recruitment process outsourcing; and customized talent and supplier management solutions, as well as act as a subcontractor or associate vendor to other national providers in their MSPs. It serves multinational, national, and local customers in various industries, including aerospace, automotive, banking and finance, consumer electronics, information technology, insurance, life science, manufacturing, media and entertainment, pharmaceutical, software, telecommunication, transportation, and utilities. The company was founded in 1950 and is headquartered in Orange, California.

24. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the January 12, 2022 press release announcing its 2021 Q4 financial results, the Company highlighted Revenue was $227.8 million, a 7.9% increase compared to the fourth quarter of fiscal 2020; and GAAP Operating Income was $2.3 million, a $13.8 million improvement compared to the prior-year quarter.

25. Speaking on these positive results, CEO Defendant Jenks commented on the Company's positive financial results as follows, "Our performance in the fourth quarter and fiscal 2021 reflects the successful and continued execution of our strategic initiatives. Achieving year-over-year revenue growth each quarter and for the full year, combined with expanding our gross margin and reducing SG&A expense, we reported meaningful increases in both net income and Adjusted EBITDA."

26. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Volt. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

27. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Volt to enter into the Proposed Transaction without providing requisite information to Volt stockholders such as Plaintiff.

***The Flawed Sales Process***

28. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29. Notably, the Recommendation Statement indicates that a so-called "Strategic Alternatives Committee" of the Board, was created and composed of independent directors during a previous sales process occurring from 2017 – 2018, the Recommendation Statement provides no information if this Strategic Alternatives Committee continued to exist and/or played any role whatsoever in the sales process leading to the Proposed Transaction, if a different committee of a similar nature was created during the more recent sales process, or if no such committee was created or involved in the more recent sales process.

30. In addition the Recommendation Statement fails to disclose the identity of the directors who sat on the Strategic Alternatives Committee, its powers, or the same information for any other committee created to fill a similar role during the sales process leading to the Proposed Transaction.

31. The Recommendation Statement does not provide adequate information regarding the nature of the market check which was done by Foros on behalf of the Company, including whether the outreach involved shopping the Company or strictly was limited to soliciting bids for an equity investment in the Company.

32. In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Vega, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Vega, throughout the sales process, if any, would fall away.

33. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

**The Proposed Transaction**

34. On March 14, 2022, Volt and Vega issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **ORANGE, Calif. & ATLANTA--(BUSINESS WIRE)--** Volt Information Sciences, Inc. ("Volt" or the "Company") (NYSE-AMERICAN: VOLT), a global provider of staffing services, and Vega Consulting, Inc. ("Vega"), an affiliate of ACS Solutions ("ACS Solutions"), a global provider of information technology solutions and services (www.acsicorp.com), announced today that Volt and Vega have entered into a definitive merger agreement under which Volt will be acquired for $6.00 per share in cash. This per share purchase price represents a premium of 99% to the Company's closing stock price on March 11, 2022.
>
> Vega will commence a tender offer no later than March 25, 2022 to acquire all outstanding shares of Volt for $6.00 per share in cash. The merger agreement was approved by Volt's board of directors, which recommends that Volt stockholders tender their shares in the offer.
>
> Raj Sardana, Chief Executive Officer of ACS Solutions, commented, "We're pleased to announce the plan to acquire Volt, and look forward to welcoming their talented teams to our family of companies. This transaction will diversify our business mix by adding a sizable commercial staffing and MSP business to our staffing services portfolio, further expanding our suite of services and offerings."
>
> Volt's President and Chief Executive Officer, Linda Perneau, added, "This acquisition offers Volt a compelling opportunity for continued growth. With ACS Solutions as our sister company, we will be in a position to accelerate investments in technology, enhance our capabilities, expand our operations, and ultimately deliver better value to our clients -- all complementing the superior client service that has come to be synonymous with the Volt brand."

In connection with the execution of the merger agreement, certain of Volt's stockholders, directors and executive officers holding approximately 26% in the aggregate of the Company's outstanding shares entered into agreements in which they agreed to tender all of their shares in the tender offer.

The closing of the transaction is subject to customary closing conditions, including the expiration or termination of certain regulatory periods and the tender of shares representing at least two-thirds of the Company's outstanding common stock in the tender offer. Following the successful completion of the tender offer, Vega will acquire any remaining shares not tendered in the tender offer through a second-step merger at the same price.

The merger agreement provides for a "go-shop" period during which Volt – with the assistance of Foros, its exclusive financial advisor – will actively solicit, evaluate and potentially enter into negotiations with, and provide due diligence access to, parties that submit alternative proposals. The go-shop period will extend for 30 calendar days until April 11, 2022. Volt will have the right to terminate the merger agreement to enter into a superior proposal, subject to the conditions and procedures specified in the merger agreement. There can be no assurance that this process will result in a superior proposal. Volt does not intend to disclose developments during this process unless its Board of Directors makes a decision with respect to any potential superior proposal.

The transaction is expected to close in the second calendar quarter of 2022. After closing, Volt will become a privately-held company and shares of Volt common stock will no longer be listed on any public market. For further information regarding the terms and conditions contained in the merger agreement, please see Volt's Current Report on Form 8-K, which will be filed with the U.S. Securities and Exchange Commission (the "SEC") in connection with this transaction.\

**Potential Conflicts of Interest**

35. The breakdown of the benefits of the deal indicates that Volt insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Volt.

36. Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director | Number of Shares | Cash Consideration for Shares ($) |
|---|---:|---:|
| *Directors* | | |
| William J. Grubbs | 204,576 | 1,227,456 |
| Celia R. Brown | 86,316 | 517,896 |
| Nick S. Cyprus | 72,958 | 437,748 |
| Bruce G. Goodman* | 2,007,000 | 12,042,000 |
| Arnold Ursaner | 109,926 | 659,556 |
| *Executive Officers* | | |
| Linda Perneau | 402,365 | 2,414,190 |
| Herbert M. Mueller** | 140,424 | 842,544 |
| Nancy T. Avedissian | 110,357 | 662,142 |
| Paul Tomkins | 45,377 | 272,262 |
| Craig Lewis | — | — |
| Lori Schultz | 53,921 | 323,526 |
| Leonard Naujokas | 27,294 | 163,764 |

37.     Moreover, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name of Executive Officer or Director | Number of Shares Subject to Vested Company Stock Options | Cash Consideration for Vested Company Stock Options ($) | Number of Shares Subject to Unvested Company Stock Options | Cash Consideration for Unvested Company Stock Options ($) | Total Cash Consideration for Company Stock Options in the Merger ($) |
|---|---:|---:|---:|---:|---:|
| *Directors* | | | | | |
| William J. Grubbs | — | — | — | — | — |
| Celia R. Brown | — | — | — | — | — |
| Nick S. Cyprus | — | — | — | — | — |
| Bruce G. Goodman | — | — | — | — | — |
| Arnold Ursaner | — | — | — | — | — |
| *Executive Officers* | | | | | |
| Linda Perneau | 133,181 | 253,044 | — | — | 253,044 |
| Herbert M. Mueller | — | — | — | — | — |
| Nancy T. Avedissian | 59,725 | 98,546 | — | — | 98,546 |
| Paul Tomkins | — | — | — | — | — |
| Craig Lewis | — | — | — | — | — |
| Lori Schultz | — | — | — | — | — |
| Leonard Naujokas | — | — | — | — | — |

| Name of Executive Officer or Director | Number of Shares Subject to Company RSUs | Cash Consideration for Company RSUs ($) |
|---|---:|---:|
| *Directors* | | |
| William J. Grubbs | 21,480 | 128,880 |
| Celia R. Brown | 21,480 | 128,880 |
| Nick S. Cyprus | 51,056 | 306,336 |
| Bruce G. Goodman | 21,480 | 128,880 |

COMPLAINT

| | | |
|---|---|---|
| Arnold Ursaner | 51,056 | 306,336 |
| *Executive Officers* | | |
| Linda Perneau | 501,085 | 3,006,510 |
| Herbert M. Mueller | 154,737 | 928,422 |
| Nancy T. Avedissian | 106,918 | 641,508 |
| Paul Tomkins | — | — |
| Craig Lewis | 31,646 | 189,876 |
| Lori Schultz | 64,071 | 384,426 |
| Leonard Naujokas | 36,597 | 219,582 |

| Name of Executive Officer or Director | Number of Shares Subject to Performance-Vested Company PSUs | Cash Consideration for Performance-Vested Company PSUs ($) |
|---|---|---|
| *Directors* | | |
| William J. Grubbs | — | — |
| Celia R. Brown | — | — |
| Nick S. Cyprus | — | — |
| Bruce G. Goodman | — | — |
| Arnold Ursaner | — | — |
| *Executive Officers* | | |
| Linda Perneau | 279,652 | 1,677,912 |
| Herbert M. Mueller | 89,306 | 535,836 |
| Nancy T. Avedissian | 51,808 | 310,848 |
| Paul Tomkins | — | — |
| Craig Lewis | — | — |
| Lori Schultz | 30,079 | 180,474 |
| Leonard Naujokas | 20,136 | 120,816 |

38. In addition, certain employment agreements with certain Volt executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

| Name | Cash ($)(1) | Equity ($)(2) | Other ($) | Total ($) |
|---|---|---|---|---|
| Linda Perneau | 2,688,276 | 4,937,466 | — | 7,625,742 |
| Herbert M. Mueller | 1,388,583 | 1,464,258 | — | 2,852,841 |
| Nancy T. Avedissian | 743,018 | 1,050,902 | — | 1,793,920 |

39. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40. Thus, while the Proposed Transaction is not in the best interests of Volt, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

41. On March 25, 2022, the Volt Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

> *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

    a. Whether the Strategic Alternatives Committee formed in the 2017-2018 marketing process continued to operate and was involved in the sales process leading up to the Proposed Transaction, and

        i. if so:

            1. The specific identity of the Board member who sat on that committee; and

            2. The specific powers of that Committee;

        ii. If not:

            1. Whether a committee of independent board members was created to run the sales process and if not the specific reasons for failing to create such a committee;

    b. Adequate information regarding the market outreach performed by Foros regarding if Foros was soliciting interest based on an equity investment only or if potentially interested third parties were made aware of the Company's willingness to enter into a sale;

    c. Whether the terms of any confidentiality agreements entered during the sales process between Volt on the one hand, and any other third party (including Vega), if any, on the other hand, differed from one another, and if so, in what way;

    d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Vega) throughout the sales process, if any, would fall away; and

    e. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Volt's Financial Projections*

43. The Recommendation Statement fails to provide material information concerning financial projections for Volt provided by Volt management and relied upon by Foros in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

44. Notably, in connection with its fairness opinion rendered to the Company Board

regarding the Proposed Transaction, Foros notes that it reviewed, "reviewed certain information, including the Company Forecasts and other financial and operating data concerning the Company, prepared by the management of the Company."

45. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Volt management provided to the Board and Foros. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

46. With regard to *Company Forecast* projections for Volt prepared by Volt management, the Recommendation Statement fails to disclose material line items for the following metrics:

  a. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: earnings or loss before interest, income taxes, depreciation and amortization, and the specific adjustments made to exclude share-based compensation expense, and special items including impairments, restructuring and severance;

  b. Unlevered Free Cash Flows, including all underlying necessary inputs and assumptions, including specifically: share-based compensation, restructuring costs, taxes, increases in working capital and capital expenditures.

47. The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Foros's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Foros*

50.     In the Recommendation Statement, Foros describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a. The terminal value for the Company calculated;

    b. The specific inputs and assumptions used to determine the utilized perpetual growth rates of 0.0%, 1.0% and 2.0%;

    c. The specific inputs and assumptions used to determine the utilized discount rate of 13.5%;

    d. The company's weighted average cost of capital utilized; and

    e. The specific "considerations that Foros deemed relevant in its professional judgment and experience".

52.     With respect to the *Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

    a. Specific reasoning as to why only one precedent transaction was analyzed;

    b. The specific metrics for the precedent transaction analyzed;

    c. The date on which the analyzed precedent transaction closed;

        d.   The value of the analyzed precedent transaction; and

        e.   The specific inputs and assumptions used to determine the TEV-to-EBITDA multiple of 7.9x.

53.   With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

        a.   The metrics for each selected public company analyzed;

        b.   The specific inputs and assumptions used to determine the utilized reference range of TEV / FY 2021A EBITDA of 6.0x to 7.5x; and

        c.   The specific inputs and assumptions used to determine the utilized reference range of TEV / FY 2022E EBITDA of 5.0x to 6.5x.

54.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

55.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Volt stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

### FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

56.   Plaintiff repeats all previous allegations as if set forth in full herein.

57. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

58. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]."

59. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

62. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

63. Plaintiff has no adequate remedy at law.

## SECOND COUNT

## Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Individual Defendants)

64. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

65. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

66. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

67. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

68. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

69. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

70. Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

71. Plaintiff repeats all previous allegations as if set forth in full herein.

72. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

73. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Volt, Inc.'s business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

75. The Individual Defendants acted as controlling persons of Volt, Inc. within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Volt, Inc. to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Volt, Inc. and all of its employees. As alleged above, Volt, Inc. is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 6, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

COMPLAINT